## Justice v. Blackburn et al.

Oct. 16, 1945.

P. B. Stratton for appellant.

Francis M. Burke and J. A. Runyon for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This action involves the location of the boundary line between the property of F. A. Justice, plaintiff below, and N. L. Blackburn and Edward Justice. The line contended for by the appellant parallels and is some 46 feet east of a fence which, according to the testimony for the appellees, is the true division line. The chancellor found for the appellees.

Since the judgment contains a careful analysis of the evidence offered by both parties, and the chancellor's reasons for ruling as he did, we quote it in full:

"This cause having been submitted to the court for opinion and judgment, and the court having carefully considered the pleadings, evidence and exhibits, and having gone upon the ground with counsel for the parties and viewed the premises, and having heard arguments of counsel, is of opinion that plaintiff is not entitled to the relief sought in his petition. The following are the facts.

"By a deed dated March 22nd, 1915, N. L. Blackburn, who owned a large tract of land on the Levisa Fork of Big Sandy River, in Pike County, together with his wife, Missouri Blackburn, who joined in the deed, conveyed to J. A. Justice and Pollie Justice, the latter being a daughter of the grantors, in consideration of love

and affection, a portion of said tract of land lying on the lower or west end of the larger tract, and on October 21st, 1938, also in consideration of love and affection, the grantees, J. A. and Pollie Justice, by deed conveyed the land conveyed to them to their son, Fred A. Justice, the plaintiff in this action. There is a disagreement between the parties as to the true location of the upper or east line of the tract conveyed to J. A. and Pollie Justice and by them to the plaintiff, this being the line between the land retained by N. L. Blackburn and that conveyed to J. A. and Pollie Justice.

"The land conveyed by N. L. Blackburn and wife to J. A. and Pollie Justice, consisting of two adjoining tracts, is described in the deed as follows: 'Beginning on a sycamore and then running to a stone, then down the road to J. M. Blackburn's line, then with J. M. Blackburn's line to the river, thence up the center of the river to opposite the sycamore, thence to the sycamore, viz: beginning at the center of a drean at its mouth, then up the center of the drean to a planted stone, thence to a persimmon tree, thence to a maple, thence back to a white oak bush thence to a pine, thence straight down the hill to the road, thence up the road to the mouth of the drean.'

"Both the sycamore called for as the beginning corner and the persimmon tree hereinafter referred to have been gone for many years, and there is nothing now left on the ground to mark where they stood. The parties and their witnesses do not agree, and the defendant, N. L. Blackburn, who is a man of advanced age, seems to think the beginning corner of the boundary meant to be described in the deed was a persimmon instead of a sycamore, though of course he can not now be heard to say the description as given in the deed is not correct.

"After making the deed of March 22nd, 1915, to J. A. and Pollie Justice, and while the timber corners were apparently still standing, and long before the conveyance by them on October 21st, 1938, to the plaintiff, Fred A. Justice, the defendant, N. L. Blackburn inclosed by fence a garden lying below his residence and extending down to the line claimed by him as the line between his remaining land and that conveyed to J. A. and Pollie Justice. The fence around the garden is a paling or slat fence, and across the lower or west end of the garden

is in a straight line which if extended would reach to the point claimed by the defendants as the place where the persimmon tree stood, at the point marked Sta. No. 3 on the map of the engineer, Lon Ford, filed in evidence.

"The defendants were in possession of this garden at the time the plaintiff obtained his deed, and have continuously cultivated it since long before he obtained his deed, and it is shown to the satisfaction of the court that in putting the fence across the lower or west end of the garden there was an attempt to put it on the line between the parties, and that it was on the line with the exception of about two panels which were slightly off but have since been straightened up and put on the line in repairing the fence where it had fallen down.

"It is the contention of the plaintiff and his grantors, J. A. and Pollie Justice, and the plaintiff has undertaken to prove, that the persimmon tree stood 46 feet further up the river or east from the location claimed by the defendants, at the point shown on the Ford map as Sta. No. 2, and that the sycamore stood at the point indicated on the map as Sta. No. 1, which is 46 feet up the river or east of the line claimed by the defendants. In short the line as contended for by the plaintiff his grantors runs exactly parallel to the line claimed by the defendants and 46 feet further up the river or east of that line, and if accepted would cut off to the plaintiff 46 feet of the lower end of the garden of the defendants.

"The plaintiff and his grantors undertake to explain the failure to complain of the alleged encroachment of the garden upon the land claimed by them by saying that as N. L. Blackburn was the father of Pollie Justice they did not think he would try to claim their land, and that besides he agreed to pay rent for the use of the land. But this is denied, and the court is convinced from the evidence that the fencing of the garden was done by N. L. Blackburn under a claim of right, and that he at no time occupied it as tenant of the plaintiff or his grantors, or paid any rent thereon.

"Since it appears that the persimmon tree was standing when the garden was fenced, and the fence across the lower end of the garden was put on the line between the parties and in line with the persimmon tree, it follows that a straight line running from

the end of the fence across the lower end of the garden and extending in the same direction toward where the persimmon tree stood will show pretty accurately where it stood, and the court therefore accepts its location as being at the point claimed by the defendants, shown on the Ford map as Sta. No. 3. The court finds from the evidence that there has been no material change in the location of the fence across the lower end of the garden since it was first built, the only change being to straighten up and put on the line about two panels of the fence on the end nearest to the river in repairing the fence where it had fallen down.

"The court finds and so adjudges that the true line between the lands of the parties is a line beginning at the middle of the Levisa Fork of Big Sandy River, thence running North 31 degrees and 40 minutes East, as shown on the Ford map, to the end of the slat fence across the lower end of the garden of defendants, thence in the same direction with said fence to end of the fence across the lower end of said garden, thence continuing in the same direction to the point where the persimmon tree stood and onto the public road.

"There appears to be no satisfactory way to locate the point where the sycamore stood, called for as the beginning corner of the tract of land conveyed to J. A. and Pollie Justice by the deed of March 22nd, 1915, from N. L. Blackburn and wife, but the court finds it to have stood somewhere on the line as herein established and not at the point claimed by the plaintiff and his grantors.

"For the foregoing reasons it is now hereby adjudged by the court that the petition of the plaintiff, Fred A. Justice, be, and it is hereby, dismissed, and that he take nothing thereby. It is further adjudged by the court that the defendants, N. L. Blackburn and Edward Justice, recover from the plaintiff their costs herein expended, for which execution may issue, and this cause is now stricken from the docket of this court.''

Our examination of the record convinces us that the chancellor reached a proper determination of the action. Furthermore, it must not be overlooked that he personally viewed the premises. Under the circumstances, we think the judgment should be and it is affirmed.